[No. 25300.   Department Two.   March 7, 1935.]

DAN FIORITO et al., Appellants, v. THE STATE OF WASHINGTON et al., Respondents.[1]

D. D. Mote and Preston, Thorgrimson & Turner, for appellants.

The Attorney General, E. P. Donnelly, Assistant, A. C. Van Soelen, and Jno. A. Homer, for respondents.

MITCHELL, J.—The state of Washington and the city of Seattle entered into a contract, in 1932, with Dan Fiorito and others, copartners doing business under the firm name of Northwest Construction Company, hereinafter referred to as the contractor, for the paving, etc., of Division No. 1 of Aurora avenue, in Seattle, as ordered by ordinance No. 62212. The avenue, as completed, ran through Woodland park.

After the work was finished, the contractor claimed

[1]Reported in 42 P. (2d) 1.

pay for four separate items as extras, and brought this action to recover for the same. The four items were: (1) Grubbing and removing stumps from that portion of the improvement in Woodland park; (2) stripping the top soil from that portion of the improvement in Woodland park, placing it in piles, and afterward spreading it over disturbed areas within the improvement; (3) "overhaul," bringing earth from outside the improvement to construct necessary embankments within the improvement; and (4) plowing not called for by the contract.

Findings and judgment were entered for the plaintiffs as to items numbered 3 and 4, from which no appeal has been taken. Findings and judgment were entered against the plaintiffs as to items 1 and 2. The plaintiffs have appealed from this portion of the judgment.

The bid or proposal, signed by the contractor and attached to and made a part of the contract, states and certifies that the contractor has personally and carefully examined the plans, specifications, form of contract and instructions for the work to be done on Division No. 1, Aurora avenue, et al., paving, etc., under ordinance No. 62212, and has examined the district where the improvement is to be made, and that they fully understand the manner in which payment is proposed to be made for the cost of the improvement; and, having made the necessary examinations, propose to furnish material and all labor necessary to complete the work upon the terms and conditions provided in the plans, specifications, contract and foregoing instructions at the following prices, towit:

"Clearing 1. Twenty-six Thousand Five Hundred Dollars — 26,500.00 Lump Sum

"Earthwork and Subgrading 2. Twenty-four cents — .24 Per Cu. Yd."

The contract consisted, in part, of general or standard plans and specifications in common use, and also special specifications as to a great number of items in the total improvement.

█ Section 75 of the general specifications provides:

"The district to be cleared and grubbed shall include: . . . all roots, stumps, trees, logs, brush, old sidewalks, planking, sills, crosswalks, curbs, . . . encountered on any portions of the work shall be piled and burned or otherwise disposed of as the City Engineer may direct; . . ."

The appellants contend in this respect that the special specifications completely take the place of the standard or general specifications, and since the special ones do not use the word "grubbing," but only the word "clearing," that they are entitled to pay for grubbing as an extra, as alleged in this item in their complaint.

There was testimony on behalf of the appellants tending to support this view. Among others, one expert witness testified, somewhat *arguendo*, that, by inference, the city engineer ordered the removal of the stumps because "the man can't excavate under the stumps without their removal," and that, therefore, the removal of the stumps constituted an extra. As a matter of fact, there was no proof that the city engineer made any order with reference to the matter. It would seem that, because the contractor, by his representative, examined the scene of the work and was thoroughly familiar with the fact of the existence of the stumps, the inference was as great, or greater, that the contract calling for clearing, if taken alone, necessarily included the indispensable thing of removing the stumps, either by grubbing or otherwise, as the street had to be completed and paved.

On the other hand, considering the general and special specifications, or either, there is no provision which, in terms or even by fair implication, substitutes the special for the standard form of specifications in this respect. As already stated, the language of the general specifications mentions ''stumps and roots, etc.,'' to be removed, while the special specifications, in speaking of what ''clearing'' shall include, after enumerating other things, says: ''And every other obstruction found within the limits of the improvement.'' If excavation and paving could not be done without removing the stumps, which manifestly was the fact, then the stumps constituted an obstruction within the meaning of the term ''clearing.'' Respondents' witnesses so testified; and further testified that, whether considered from the terms of either the special or general specifications or both, the removal of the stumps was a necessary part of the contract.

In this connection, C. G. Will, one of the engineers for the city, testified that he was familiar with the work of Aurora avenue extension through Woodland park as well as the entire project. He further testified:

''I had considerable to do with the preparation of the specifications and the direction of the preparation of plans under the supervision of the District Engineer on behalf of the City. As to what transpired with respect to call for bids with Mr. Fiorito and Mr. Odman before the bids were opened, bids were advertised on the first of March, 1932. Bids were opened April 1, 1932. Several contractors asked for interpretation of specifications. Mr. Fiorito didn't, Mr. Odman did. He asked for interpretation on both points in controversy as to wording or intent of specifications. I had several conversations with him. The last was four or five days before the opening of bids. The conversation was in my office. He was there last on March 28. The other conversations were two or three days

previous to that. The only date I noted down was the 28th. The substance of that was Mr. Odman wanted to know whether under clearing specifications in the special specifications he could get an extra for the removal of stumps in Woodland Park and whether or not he could expect extra pay for the second moving of dirt in handling the top soil. I informed him that in both cases the specifications as written included the doing of all this work for the price he bid on the items on which bids were taken and quoted various sections of the specifications. We had quite an argument about it at that time. *His bid was not in at that time.* Mr. H. P. Buckley was present at this conversation. He was transit man in the engineering department and an assistant in our office. I think he heard the conversation. In conjunction with Mr. Wartell I was supervising the job and on the job nearly every day while Mr. Odman was doing his work. I didn't order Mr. Odman to remove the stumps or to rehandle top soil. He couldn't have complied with the specific wording of the contract without doing it.''

(Mr. Odman was the representative of the contractor in all examinations for and in making bids on these items 1 and 2, and in performing the work involved in them.)

H. P. Buckley, referred to in the testimony of Mr. Will, corroborated the testimony of Mr. Will as to the conversation with Mr. Odman.

There was other testimony, more or less conflicting, upon this question, which is largely a question of fact, that cannot be reasonably set out herein. The finding of the court in this respect was:

''I find that the grubbing was required to be done under the terms of the contract without extra compensation, and that it is not an extra, and plaintiffs are not entitled to recover on this item.''

As to item No. 2, this, like item No. 1, involves very largely questions of fact, and here, too, there was a conflict in the testimony. Experts on both sides tes-

tified as to the meaning of the terms in the contract, as applied to this particular work, and there was the testimony of the city engineer's office that the contractor's representative was given to understand, prior to their bid, that both the special and general specifications applied to this item, and what the special and general specifications meant. This does not mean, of course, that the engineer's office had a right, as a matter of law, to change the meaning of the contract, but it did have the effect of giving the prospective bidder to understand the intention of the respondents that the special and general plans were to be considered together, and the intention of the respondents in the use of terms and provisions of the two instruments, as applied to the contract.

The special specifications, which are made a part of the contract, provide:

"All slopes and berms in Woodland park, including the mounds at the east ends of the overhead crossings, shall be surfaced with top soil to a depth of one (1) foot. To accomplish this, the contractor will be required to strip a sufficient amount of top soil from the area to be excavated or filled, and stock pile this material at the top or toe of the slopes *until after the grading has been done.* It shall then be spread evenly over all disturbed areas, all large stones, roots, etc., removed and the surface raked as specified for parking strips."

As to this item, there was other testimony also, which need not be further referred to.

The finding of the trial court upon this item was as follows:

"That the plaintiffs, in the carrying out of said contract as required thereby, stripped the top soil from that portion of the improvement in Woodland park required to be excavated and piled the material to one side of the improvement until the grading was done, and used such piled material for resurfacing the slopes

and berms in the portion of the improvement in Woodland Park. . . . but I find that the rehandling of the top soil was required to be done under the terms of the contract, without extra compensation, and that this is not an extra and plaintiffs are not entitled to recover on this item.''

Upon consideration of all the testimony, we are of the opinion that it clearly preponderates in favor of the findings made by the trial court upon both items 1 and 2, and that the findings sustain the judgment from which the appeal has been taken.

Affirmed.

BEALS, HOLCOMB, STEINERT, and BLAKE, JJ., concur.